IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

   v.

JASON MICHAEL SCOTT NELSON,

          Defendant.

No. 1:11-cr-30029-1-PA

**ORDER**

**PANNER, District Judge:**

Defendant Jason Michael Scott Nelson moves pro se to vacate his sentence, claiming he received ineffective assistance of counsel from his trial attorney.  I deny Defendant's motion.

**BACKGROUND**

Defendant was indicted for conspiracy and manufacture of 100 pounds or more of marijuana.  He retained counsel.

Two weeks later, a superseding indictment was filed, adding charges of unlawful possession of unregistered firearms, including machine guns and silencers.  Defendant terminated his original attorney and retained James Leuenberger.  In this motion

1 - ORDER

under 28 U.S.C. § 2255, Defendant contends Leuenberger gave him

incompetent advice on whether to plead guilty or go to trial.[1]

## I.  Defendant Lied at the Hearing on His Motion to Suppress

Leuenberger filed a motion to suppress.  Among other

arguments, Leuenberger claimed law enforcement officers

trespassed onto the curtilage of Defendant's house to gather

information in support of a search warrant.  The Government

responded that Defendant had not shown a protected privacy

interest.  To support that argument, the Government presented

testimony and exhibits showing Defendant's driveway and parking

areas did not have barriers or No Trespassing signs posted.

Shortly before the hearing, Defendant submitted a photograph

showing a No Trespassing sign posted on a tree near the driveway

to his property.  Defendant testified at the motion to suppress

hearing that the sign had been nailed to the tree for many years.

But Defendant's photo was fabricated and his testimony was false.

At a debriefing after the trial, Defendant admitted staging the

photo by taking a No Trespassing sign from another property and

nailing it to the tree.

## II.  Plea Discussions

The Government has submitted the email correspondence

---

[1]In his reply brief, Defendant drops his claims against the
attorney who replaced Leuenberger after trial.  Def.'s Reply at
2.  Defendant also drops his claim that Leuenberger was
ineffective for raising the defense of entrapment by estoppel.

between Leuenberger and Doug Fong, the assistant U.S. attorney assigned to the case. When the Government filed its response brief to the motion to suppress, Fong emailed Leuenberger. Fong wrote, "I have not made any plea offers because I assume from your letters, emails, and motions that Mr. Nelson is intent on proceeding to a hearing on your motion to suppress and then to trial. This is fine by me, but I just want to make sure this is where Mr. Nelson stands, and that there is no misunderstanding as to what he faces." Gov't Ex. 1-1, ECF 143-1.

In the email, Fong stated that Defendant faced a statutory five-year mandatory minimum sentence, and advisory sentencing guidelines ranges, depending on enhancements, of 97-121 months or 108-135 months. (Fong now states that the 108-135 range was incorrect because if the firearms were found to be unrelated to the drug offense, the range would be 87-108 months. Gov't Resp. at 4 n.1, ECF No. 142.)

Leuenberger responded to Fong's email, "Obviously, a failure to win our MTS would make a trial unappealing to us--although I do believe their [sic] is an entrapment by estoppel defense that can only be presented at trial. A failure to win our MTS would require us to rethink our case and therefore, I would not shut the door on a negotiated plea." Gov't Ex. 1-4.

After the motion to suppress was denied, Fong emailed Leuenberger, stating, "I wanted to check and see if Mr. Nelson

3 - ORDER

had any interest in resolving his case, or whether we should just
continue on to trial."  Gov't Ex. 1-6.  Fong noted that he

> was disturbed by Jason's testimony at the MTS hearing
> about the "No Trespassing" sign being posted at the
> head of his drive.  Our picture clearly shows that the
> sign was not there on the date of the search.  His
> picture taken in the days before our hearing after we
> raised the issue, along with his testimony, appears to
> be fabricated.  This raises an additional issue of
> whether we will pursue a two-level enhancement for
> attempting to obstruct the administration of justice
> under USSG 3C1.1, and/or whether we will pursue a
> separate count for perjury under 18 USC 1621 and/or
> 1623.

Gov't Ex. 1-6.

> About a week later, Fong sent Leuenberger another email:

> Jim, I was wondering if you had a chance yet to talk
> with Jason about whether he wants to resolve his case.
> In reviewing our forfeiture calculations on the
> property, it appears that they may be too high--it
> really depends on how much of the liens have been paid
> off.  I would be more than happy to look into it
> further if the case is going to get resolved.

Gov't Ex. 1-8.

> Leuenberger responded:

> Doug, I discussed Jason's case with him on Saturday.
> What I could not tell him because I don't see what it
> would be is, what will it benefit him to plead guilty
> to anything other than the acceptance of responsibility
> points at sentencing.  At this point, I am beginning to
> prepare for trial (mentally at least).

Gov't Ex. 1-7.

Fong responded, "At this point [Defendant] would still get
two levels for acceptance and he could argue for a further
reduction under 3553(a).  We are also willing to try to work

something out on the criminal forfeiture if Jason or his family
is interested." Gov't Ex. 1-7.

About a week later, Fong emailed Leuenberger about discovery
issues. Fong wrote, "Since Jason is not interested in resolving
his case, do you still want the guns re-tested by Intermountain
Forensics?" Gov't Ex. 1-9. A week later, Fong emailed
Leuenberger: "I wonder if it would help for us to chat about
where we are going with this case. . . . . If helpful, I'd also
like to discuss whether Jason really intends to take this case to
trial, and if so, the trial schedule and potential witnesses."
Gov't Ex. 1-10.

The next day, May 15, 2012, Fong sent an email to state law
enforcement officers involved in the investigation of Defendant.
Fong stated, "Just got off the phone with Nelson's lawyer. He
says the case is definitely going to trial. Time to get to
work!" Gov't Ex. 1-11.

## III. Defendant Testified Falsely At Trial

At trial, co-defendant Richard Sherman, who had pleaded
guilty, testified for the Government. Sherman stated that
Defendant had asked him to live on a small house on Defendant's
property and trim marijuana plants. Sherman testified that the
grow operation belonged to Defendant, and that he had sold about
60 pounds of marijuana for Defendant and trimmed more than 100
plants for Defendant.

Defendant took the stand and lied throughout his testimony.
He testified that only 24 of the plants seized belonged to him,
and that the other plants belonged to Sherman.  Defendant claimed
that of the 26 pounds of packaged marijuana found in a hidden
room, only 6 pounds belonged to him, and that he knew nothing
about the two firearms found with the marijuana.  Defendant
denied knowing he possessed silencers and fully automatic machine
guns, or that a box of machine gun parts was sitting on his
workbench.

The jury found Defendant guilty on all counts.  The jury
found that Defendant's property should be forfeited.

## III.  The Government's Debriefing of Defendant

A few weeks after the jury verdict, Defendant terminated
Leuenberger and retained another attorney to represent him at
sentencing.  The new attorney notified the Government that
Defendant would truthfully debrief the Government about the
crimes.  In exchange, the Government agreed to recommend the low
end of the applicable sentencing guideline range, and not to file
obstruction or perjury charges, or new charges based on
Defendant's marijuana sales while on pretrial release.

At the debriefing, Defendant continued to lie.  He claimed
that the No Trespassing sign shown in the falsified photo had
fallen off the tree and was covered by debris until he retrieved
it and nailed it to the tree.  When the Government pointed out

the sign's nail holes were not consistent that story, Defendant admitted he had taken the sign from another property.  Gov't Resp. at 4 n.3.

Defendant claimed he had sold a total of only 16 pounds in three transactions with Sherman, netting about $8,000.  Later in the debriefing, however, Defendant admitted producing 10 pounds of marijuana bud per month.  When the Government noted production at that rate would lead to a total of 180 pounds, Defendant admitted Sherman had testified truthfully about the amount of marijuana produced, and that Defendant had made about $150,000 on marijuana sales.  See Gov't Sentencing Mem. at 5, ECF No. 119.

Defendant did admit at the debriefing that he testified falsely at trial.  He said the seized plants and packaged marijuana were his, not Sherman's, and that he had sold marijuana through Sherman and others, after claiming falsely at trial that he did not sell marijuana but simply provided it to medical marijuana patients.  Defendant admitted that he continued to grow and sell marijuana from another location while on pretrial release.  Defendant also admitted that after the jury found him guilty and forfeited his property, he told friends to take everything of value from his house.  Defendant's friends did ransack the house, forcing the Government to abandon the forfeiture.

## IV. Defendant's Sentence

Defendant was subject to a statutory five-year mandatory minimum sentence. The presentence report (PSR) calculated a guideline range of 135 to 168 months. Defendant's crimimal history category was I. His base offense level was 26, and there were two-level enhancements for possession of firearms and obstruction of justice, and a three-level enhancement for having a managerial role in the operation. There was no adjustment for acceptance of responsibility. The total offense level was 33.

I adopted the PSR's calculation of the guideline range. I sentenced Defendant to 120 months, the equivalent of a two-level downward departure from the guideline range.

### STANDARDS

A prisoner serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. When there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id.

### DISCUSSION

To establish ineffective assistance of counsel, a defendant must show that his lawyer's performance fell below an objective

8 - ORDER

standard of reasonableness.  Strickland v. Washington, 466 U.S.
668, 686-87 (1984).  Courts start with the presumption that the
lawyer's performance fell within the "wide range of reasonable
professional assistance."  Id. at 689.  Courts evaluate counsel's
representation under a "most deferential" standard.  Premo v.
Moore, 562 U.S. 115, 122 (2011). . The defendant has the burden to
"show that counsel's performance was deficient."  Strickland, 466
U.S. at 687.  To prevail on an ineffective assistance claim, the
defendant also must show prejudice by establishing "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  Id. at 694.

**I.  There Was No Plea Offer by the Government**

Because most prosecutions result in guilty pleas, "criminal
defendants require effective counsel during plea negotiations."
Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012).  "[D]efense
counsel has a duty to communicate formal offers from the
prosecution to accept a plea on terms and conditions that may be
favorable to the accused."  Id. at 1408.·

Defendant contends Leuenberger failed "to apprise Nelson of
the Government's offer to settle the case with the USAO having
agreed to recommend that he receive a two-level reduction for
acceptance of responsibility, notwithstanding Nelson's having
testified falsely at the hearing on his Motion to Suppress."
Def.'s Reply at 3, ECF No. 155.

Defendant's argument fails because the Government never made a plea offer. "The absence of a plea offer is fatal to the ineffective assistance of counsel claims made in this regard." Barnes v. United States, 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) (citing Speed v. United States, 2013 WL 416026 at *3 (S.D.N.Y. Feb. 4, 2013) ("counsel had no duty to inform petitioner of any plea offer when no such offer existed")).

Here, Fong mentioned that if Defendant pleaded guilty, he would receive a two-level reduction for acceptance of responsibility and could argue for a lower sentence. The emails from Fong to Leuenberger are, at most, invitations to negotiate, but not specific plea offers. For example, Fong mentions that the Government was considering whether to seek an enhancement for obstruction of justice, or to adjust the amount of Defendant's property to be forfeited, but those issues were never resolved.

Defendant argues that in the email Fong before the motion to suppress hearing, Fong "made no indication of Mr. Nelson being eligible for a two-level enhancement for obstruction of justice." Def.'s Reply at 6. But Fong sent the email before Defendant obstructed justice by lying and fabricating evidence for the motion to suppress. In an email sent after the hearing on the motion to suppress, Fong noted that the Government was considering an obstruction of justice enhancement.

Defendant argues, "By having agreed to a two-level reduction

10- ORDER

for acceptance of responsibility . . . , the government had also agreed to not seek a two-level enhancement for obstruction of justice." Def.'s Reply at 5 (bolding deleted). While Fong stated that if Defendant pleaded guilty, he would receive a reduction for acceptance of responsibility, Fong never said the Government would not seek an enhancement for obstruction of justice.

Defendant argues that a reduction for acceptance of responsibility necessarily precludes an enhancement for obstruction of justice. But a defendant may receive both an enhancement for obstruction of justice and a reduction for acceptance of responsibility, although only in "extraordinary cases." U.S.S.G. § 3E1.1 cmt. n.4. Here, if Defendant had pleaded guilty after fabricating evidence and lying at the motion to suppress hearing, he could have qualified for both acceptance of responsibility and obstruction of justice. See United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994) ("the relevant inquiry for determining if a case is an extraordinary case . . . is whether the defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility"). In any event, there was no formal plea offer, so Defendant's claim that Leuenberger failed to communicate an offer to him fails.

11- ORDER

## II.   Defendant Did Not Receive Ineffective Assistance of Counsel

An attorney may be ineffective if he gives unreasonable advice on whether to plead guilty or go to trial.  While an attorney "cannot be required to accurately predict what the jury or court might find, . . . he can be required to give the defendant the tools he needs to make an intelligent decision." Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002).

Here, Defendant has not shown that Leuenberger's advice was so incorrect and so insufficient that Defendant was denied the right to make a reasonably informed decision about the plea offer.  See id. at 880.  I agree with the Government that Leuenberger's legal advice "is only as good as the information he receives from defendant.  If defendant is unsatisfied with the result after deceiving his own attorney, he only has himself to blame."  Gov't Resp. at 15.  Defendant does not claim that Leuenberger advised him to obstruct justice, or that Leuenberger was aware that Defendant was lying.

Defendant states that Leuenberger consistently advised him that he faced about 5 to 6 years if convicted at trial. Leuenberger's estimate would have been reasonable if Defendant had not chosen to lie and otherwise obstruct justice.  If Defendant had pleaded guilty before trial, his sentencing range would likely have been 70-87 months, using a base offense level of 26, two-level enhancements for firearms and managerial role,

12- ORDER

and minus two levels for acceptance of responsibility.  If
Defendant had gone to trial without lying or fabricating
evidence, his advisory sentencing guideline range would have been
97-121 months at most.  Leuenberger's estimate was not
unreasonable.  The Government notes, "This court is notorious for
applying [18 U.S.C. §] 3553(a) liberally, particularly in cases
such as this where the defendant has no criminal history and was
not prone to violence; attorney Leuenberger appeared to
understand this."  Gov't Resp. at 12.

Defendant has failed to show that Leuenberger's advice was
incompetent.  An evidentiary hearing is not warranted because
"the motion and the files and records of the case conclusively
show that the prisoner is entitled to no relief."  28 U.S.C. §
2255(b).

### CONCLUSION

Defendant's motions to vacate or correct sentence (#133) and
for return of seized property (#146) are denied.  No certificate
of appealability will be issued because Defendant has not made a
substantial showing of the denial of a constitutional right.  See
28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this __4__ day of April, 2015.

OWEN M. PANNER
U.S. DISTRICT JUDGE

13- ORDER